NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

KRISTEN MICHELLE GARZA, *Petitioner/Appellee,*

*v.*

PAUL ALLEN COLLINSWORTH, *Respondent/Appellant.*

No. 1 CA-CV 23-0088 FC
FILED 11-28-2023

Appeal from the Superior Court in Maricopa County
No. FC2013-053696
The Honorable Jacki Ireland, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

The Law Office of Carrie M. Wilcox, Phoenix
By Carrie M. Wilcox
*Counsel for Petitioner/Appellee*

Paul Allen Collinsworth, Chandler
*Respondent/Appellant*

---

**MEMORANDUM DECISION**

---

Judge Daniel J. Kiley delivered the decision of the Court, in which Vice Chief Judge Randall M. Howe and Judge Jennifer M. Perkins joined.

---

**K I L E Y**, Judge:

¶1        Paul Collinsworth ("Father") appeals the superior court's order awarding Kristen Garza ("Mother") final decision-making authority for their minor child M.G. (the "Child") and designating Mother as the Child's primary residential parent. For the following reasons, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

¶2        Father and Mother were never married. After the Child was born in 2012, the State of Arizona initiated child support proceedings. In 2015, the parties stipulated to an order (the "2015 Stipulated Order") awarding them joint legal decision-making authority and designating Mother as the Child's primary residential parent.

¶3        Since then, the parties have had a contentious relationship. At various times, each has gone to court or called the police to accuse the other of acting inappropriately toward, and wrongfully denying access to, the Child.

¶4        The Arizona Department of Child Safety ("DCS") opened an investigation in 2019 after receiving a report of domestic violence between Mother's then-boyfriend "David" (a pseudonym) and her other child, "Emma" (a pseudonym), who was born in 2007 and is not common to the parties. DCS's investigation uncovered additional concerns about Mother's alcohol consumption. After initiating dependency proceedings as to Emma, DCS placed the Child in Father's care and recommended that he seek an order in the Family Court case suspending Mother's parenting time. Father accordingly filed a petition to modify the 2015 Stipulated Order, asking that he be awarded sole legal decision-making authority and that Mother's parenting time be suspended.

¶5        After an evidentiary hearing in July 2020, the court found that "Mother has an admitted substance abuse issue with alcohol" and that the Child "is at risk in Mother's home due to alleged verbal abuse by" David. The court left the parties' existing award of joint legal decision-making

2

authority in effect but entered temporary orders barring contact between David and the Child and requiring that Mother's parenting time be supervised pending her participation in substance abuse treatment. The court also appointed a Best Interests Attorney (the "BIA") to "investigate the situation involving the [C]hild" and "represent [her] best interests" in further proceedings.

¶6            In April 2021, DCS dismissed the dependency as to Emma, reporting to the BIA that DCS would "no longer" require Mother to participate in substance abuse treatment because she had "really stepped up to the plate" and "done everything asked of her."

¶7            The court set an evidentiary hearing on the petition to modify the 2015 Stipulated Order and all associated requests for relief on August 31, 2021. Before the hearing, the BIA filed a position statement in which she reported, *inter alia*, that Mother "admitted to alcohol addiction" and "participated in random alcohol testing." Although Mother "consistently tested negative," the BIA cautioned that "three" of her test results indicated that the "specimen" had been "diluted." The BIA further stated that, although Mother adamantly denied any "form of domestic violence in her home," the BIA's interview with the Child indicated otherwise. According to the BIA, the Child expressed fear of David's outbursts of anger and recalled one occasion when he "grabbed her wrist really hard," causing her to feel "afraid." Concluding that, notwithstanding Mother's denials, "it appears clear that domestic violence did occur on some level in Mother's home," the BIA recommended that Mother "complete DV counseling." The BIA concluded that both parties "have a solid bond" with the Child and "encouraged" them to address their "great dysfunction in communicating" by "find[ing] better ways to communicate with one another for [the Child's] sake."

¶8            Father and Mother both testified at the August 31 hearing. A few days later, the court issued orders (the "September 2021 Orders") that (1) awarded the parties joint legal decision-making authority but granted Father "the ability to make the final decision" if the parties "cannot agree" on an issue "after making a good faith effort to reach an agreement" and (2) designated Father as the Child's primary residential parent. The court rejected Mother's testimony that the Child and David have a "very close and positive" relationship, finding that "Mother has minimized [the Child's] expressed fear and tension" with David and that Mother was not "a credible witness as to this issue." "[A]pplaud[ing]" Mother's "efforts to achieve sobriety," the court nonetheless determined that Mother's parenting time should continue to be supervised because she "has not yet

addressed the concerns for domestic violence in her home." The court required Mother to participate in biweekly therapy with a therapist of her choosing, at which point she would be entitled to exercise unsupervised parenting time as long as she did not leave the Child unsupervised with David at any time. Finally, the court ordered that the Child "be enrolled in forensically-informed play therapy with a qualified child counselor within 30 days." The court emphasized that, although Father was required to "make efforts to consult with Mother regarding a therapist for [the Child]," he was ultimately "responsible for ensuring [the Child] attends weekly therapy."

¶9            Roughly three months after the court issued the September 2021 Orders, Father filed another petition to modify ("Father's Petition to Modify") asking the court to reinstate the requirement that Mother's parenting time be supervised. In support of his request, Father stated, "I believe that she is again abusing alcohol and drugs." Although Arizona statute restricts the ability of parents to seek modification of legal decision-making or parenting time orders within one year of their issuance, *see* A.R.S. § 25-411(A), the court allowed the petition to modify the September 2021 Orders to move forward based on Father's allegation of Mother's relapse into substance abuse.

¶10           In March 2022, Father filed a motion for temporary orders without notice to suspend Mother's parenting time, alleging that Mother left the Child alone with David in violation of the existing parenting time order. The court appointed a Court Appointed Advisor (the "CAA") to investigate and make recommendations.

¶11           After interviewing each of the parties and the Child, the CAA found insufficient justification to require that Mother's parenting time be supervised. The CAA expressed concern, however, that Mother was "minimizing" the alcohol abuse and domestic violence issues that had been raised during the proceedings. The CAA also addressed Mother's complaints that Father "has not consulted with her" about decisions affecting the Child. Noting that, on one occasion, Father waited until "the last minute" to inform Mother that he had scheduled a medical appointment for the Child during Mother's parenting time, the CAA opined that Father had "not communicated appropriately" with Mother.

¶12           In April 2022, Mother notified Father that she and David would be getting married in Las Vegas, Nevada, and she wanted to bring the Child to the wedding. Noting that he had not been given 30 days' advance notice of the planned out-of-state travel as required by the

September 2021 Orders, Father filed what he labeled an "Expedited Request for Good Cause Shown" asking the court to "forbid[]" Mother "from taking [the Child] out of the State." Although the court denied Father's motion 11 days later, it appears that the wedding took place in the interim without the Child in attendance.

¶13     On July 21, 2022, Mother filed a cross-petition to modify the September 2021 Orders, asserting that Father had not complied with them. She alleged, among other things, that Father was "planning to enroll [the Child] in a new school" without seeking Mother's "input" and that he failed to "enroll[] [the Child] in the Court Ordered forensic play therapy." Mother asked the court to award her sole legal decision-making authority and "physical care . . . and control" of the Child, with Father having "reasonable parenting time." Alleging that "Father continuously berates" and "threatens her," Mother also asked that Father be ordered "to attend anger management classes."

¶14     An evidentiary hearing on the competing petitions to modify the September 2021 Orders began on August 3, 2022. Before the hearing, the case was reassigned to a different judicial officer due to the superior court's periodic rotation of judicial calendars. Although the transcript of the August 3 hearing is not included in the appellate record, the minute entry indicates that Father and the CAA testified on that date. Because the parties did not complete their presentation of evidence that day, the court continued the hearing to a later date.

¶15     On August 13, 2022, Mother tested positive for alcohol. After receiving the test results, Father filed what he labeled a "motion to dismiss" in which he asked that Mother "be placed back on supervised visits" or, at a "minimum," that she be required to "start all over with testing." Meanwhile, Mother filed a notice attributing her positive test result to "having her hair dyed," asserting that "[t]he dye used to color [her] hair had alcohol in the product."

¶16     The continued hearing took place on December 5, 2022. At the hearing, Father expressed concerns about the "consistency" of Mother's alcohol testing but did not ask that Mother's parenting time be supervised or otherwise restricted. On the contrary, when the court asked him, "[W]hat kind of order do you want for parenting time?", Father testified, "I would like things to stay the way they are." On cross-examination, Father admitted that he had not enrolled the Child in the "forensically-informed play therapy" required by the September 2021 Orders but testified that he took the Child to see a counselor through Terros on a weekly basis.

¶17        Mother then presented her case-in-chief. Among other things, Mother testified that (1) the Child and David have a good relationship, (2) Mother participated in biweekly domestic violence counseling, and (3) she is sober. To support her testimony on these points, Mother presented exhibits that include documentation from her physician reflecting that her "[a]lcohol dependence" is "in remission" and a letter from her therapist confirming her completion of an assessment and participation in "bi-weekly individual counseling session[s]." Mother also testified that Father is unwilling to co-parent with her, asserting, for example, that Father did not consult with her before transferring the Child to a new school. Mother supported her testimony on this point with copies of messages exchanged by the parties on a co-parenting app called "OurFamilyWizard." Father then cross-examined Mother.

¶18        After the hearing, the superior court issued a lengthy and detailed order on December 21, 2022 (the "December 2022 Orders"), setting forth its findings "that Mother has successfully engaged in alcohol testing and individual therapy" and that the court had "no concerns" about the Child being "left . . . unsupervised" in David's care. The court further found that Father "used his 'final say' improperly" when he "move[d] the [C]hild to a new school without having a good faith discussion with Mother first," which, the court noted, "is a violation of their current orders." The court also faulted Father for refusing to let Mother bring the Child along when she and David got married in Las Vegas. The court therefore reaffirmed the prior award of joint legal decision-making authority to the parties but awarded Mother final decision-making authority. The court further designated Mother as the Child's primary residential parent, with Father having parenting time on alternate weekends during the school year, on an alternate weekly basis in the summer, and on holidays according to a detailed schedule.

¶19        Father filed a timely notice of appeal, and we have jurisdiction under A.R.S. § 12-2101(A)(1).

**DISCUSSION**

¶20        Mother devotes much of her answering brief to detailing the myriad of ways in which Father's opening brief fails to comply with the Arizona Rules of Civil Appellate Procedure. Although Father's brief does, indeed, leave much to be desired—it does not, for example, include a single record citation—we disagree with Mother's contention that "Father's brief wholly fails to give this Court a basis for considering the relief requested." We decline Mother's invitation to summarily dismiss this appeal. *See*

*Clemens v. Clark*, 101 Ariz. 413, 414 (1966) (an appellate court may, in its discretion, entertain a deficient brief on its merits).

¶21 We review the superior court's legal decision-making and parenting-time orders for an abuse of discretion. *Engstrom v. McCarthy*, 243 Ariz. 469, 471, ¶ 4 (App. 2018). An abuse of discretion occurs when the court commits an error of law in reaching a discretionary decision or when the record does not support the court's decision. *Id.* This Court "views the evidence in the light most favorable to upholding the superior court's orders and will affirm findings if reasonable evidence supports them." *Smith v. Smith*, 253 Ariz. 43, 45, ¶ 9 (App. 2022).

**A.      The Court's Findings of Fact Are Supported by Reasonable Evidence.**

¶22 Father challenges the factual findings set forth in the December 2022 Orders, arguing, *inter alia*, that the court "erred in determining that [Mother] was a credible witness and had fully addressed her substance abuse issues."

¶23 On its face, Father's argument is an invitation to re-weigh the evidence and second guess the court's determination of witness credibility. Because this Court "defer[s] to the superior court's factual findings unless they are clearly erroneous," *Brucklier v. Brucklier*, 253 Ariz. 579, 582, ¶ 10 (App. 2022), we decline Father's invitation to re-weigh the credibility of Mother's testimony, *see Pugh v. Cook*, 153 Ariz. 246, 247 (App. 1987) ("An appellate court will not weigh the evidence" or "judge the credibility of the witnesses," as those are "matter[s] within the province of the trier of fact."); *Hurd v. Hurd*, 223 Ariz. 48, 52, ¶ 16 (App. 2009) ("Our duty on review does not include re-weighing conflicting evidence" or judging "the credibility of the witnesses.").

¶24 In a similar vein, Father complains that the court "ignored" the fact "that Mother had previously been deemed to be untruthful and suspect in her testimony and had actively misrepresented material evidence at prior hearings." Father's argument on this point appears to refer to the prior judge's finding, as set forth in the September 2021 Orders, that Mother's testimony about the Child's positive relationship with David was not "credible."

¶25 The record refutes Father's claim that the court "ignored" the September 2021 Orders; the court expressly discussed them in the December 2022 Orders. To the extent that Father suggests that the court's

adverse determination of Mother's credibility when she testified in August 2021 was somehow entitled to a binding or preclusive effect in evidentiary proceedings that took place in 2022, he cites no authority for this suggestion, and we are aware of none.

¶26 Father also complains that the court "ignored" other "material evidence" such as Mother's history of alcoholism and "the CAA's and BIA's written opinions" about her "consumption of alcohol."

¶27 Again, the record does not support Father's assertions. The exhibits admitted at the hearing that began in August 2022 and concluded in December 2022 include the CAA reports and Mother's medical records that address her alcohol dependence. Unless it affirmatively appears to the contrary, we assume that the court fully considered all admitted evidence before issuing its decision. *See Fuentes v. Fuentes*, 209 Ariz. 51, 55, ¶ 18 (App. 2004) (as amended). Further, the CAA testified at the hearing and each side had an opportunity to cross-examine her. The record does not indicate that Father ever directed the court's attention to the position statement that the BIA filed in August 2021.

¶28 The court discussed Mother's history of alcohol abuse extensively in the December 2022 Orders. The court's determinations that, notwithstanding her "history of alcohol abuse," Mother "obtained treatment," "successfully engaged in alcohol testing," and "demonstrated sobriety" are supported by reasonable evidence in the record. The mere fact that the record includes evidence from which conflicting inferences could be drawn about Mother's credibility and sobriety does not establish that the court failed to consider the evidence before it. *See In re the Marriage of Zirpel*, 2 CA-CV 16-0089, 2017 WL 1075416, at *7, ¶¶ 31-32 (Ariz. App. Mar. 22, 2017) (mem. decision) (rejecting appellant's claim that trial court "ignored her testimony," reasoning that "we presume the trial court considered all admitted evidence" and "do not reweigh conflicting evidence").

¶29 Father also argues that the court improperly "discounted previous alleged domestic violence in Mother's home without finding that good cause existed to consider an earlier period." To the extent that this rather confusing statement is intended to assert that the court gave insufficient weight to the evidence of past domestic violence in Mother's home, it is for the superior court, not this Court, to determine the weight to be given to the evidence. *See In re Estate of Pouser*, 193 Ariz. 574, 579, ¶ 13 (1999) ("In reviewing a trial court's findings of fact, we do not reweigh conflicting evidence or redetermine the preponderance of the evidence.").

The court's conclusions about domestic violence are supported by its factual findings, and the record reasonably supports its factual findings.

¶30            Father makes additional factual assertions for which he cites no record evidence, such as, for example, his claims about Mother's alleged "history of arrests" and "prescription drug abuse[]" as well as an occasion on some unspecified date when Mother purportedly "passed out on a lounge chair poolside at her residence." Because Father cites nothing in the record to support these assertions, they entitle Father to no relief. *See Sholes v. Fernando*, 228 Ariz. 455, 457, ¶ 2 n.2 (App. 2011) (appellate court may disregard facts not supported with appropriate citations to the record).

¶31            Finally, Father argues that the court's finding that he transferred the Child to a new school without consulting Mother "was in error," complaining that the court "refused to elicit or accept [his] testimony" about "the discussions" he had with Mother about "the proposed changed in schools" prior to the transfer.

¶32            At the continued hearing, Father testified that he had spoken with Mother "numerous times" about the Child's transfer to a new school before he enrolled her. He admitted, however, that he had no documentary evidence to support his claim. In her testimony, Mother denied that Father consulted with her before transferring the Child to a different school. Because the court had the opportunity to observe the witness testimony firsthand, we must defer to the court's decision to accept Mother's testimony that Father made the decision to change the Child's school unilaterally and to reject Father's contrary testimony. *See Pugh*, 153 Ariz. at 247. Moreover, Mother supported her testimony with a copy of the parties' exchange on the OurFamilyWizard app in which, in response to Mother's complaint that she lacked information about the Child's new school, Father replied, "I advised you 8 weeks [before the change] about the school." Father's contemporaneous statement that he "advised" Mother of the new school supports the court's finding that, instead of consulting with Mother as required, Father made the decision unilaterally and then informed Mother of his decision.

¶33            In essence, each of Father's arguments challenges the weight and credibility of the evidence the court relied upon in making its ruling. But the fact that evidence might reasonably support other findings does not establish an abuse of discretion. *See also Gutierrez v. Gutierrez*, 193 Ariz. 343, 347, ¶ 13 (App. 1998) ("The evidence in this case was conflicting. We will defer to the trial court's determination of witnesses' credibility and the

weight to give conflicting evidence."). We reject Father's challenges to the findings of fact in the December 2022 Orders.

**B.      The Court Did Not Abuse Its Discretion in Finding the Material Change in Circumstances Necessary to Justify Modifying the September 2021 Orders.**

¶34      Father next argues that the court erred in finding the "material change in circumstances affecting the welfare" of the Child necessary to justify "a change in physical custody." According to Father, the evidence presented was "insufficient" to prove the "detrimental change in [the Child's] life" required to justify modifying the September 2021 Orders.

¶35      Since Father is the one who initially sought modification of the September 2021 Orders, he is not entitled to complain on appeal that the court did, in fact, modify those orders. "[O]ne who deliberately leads the court to take certain action may not upon appeal assign that action as error." *Caruthers v. Underhill*, 235 Ariz. 1, 7, ¶ 23 (App. 2014) (citation omitted).

¶36      In his opening brief, Father denies that he sought modification of the September 2021 Orders, stating that he filed Father's Petition to Modify merely to obtain "clarification" of the September 2021 Orders. Father's claim that he merely sought to clarify, not modify, the existing orders is simply untrue. Alleging that Mother "is again abusing alcohol and drugs," Father's Petition to Modify expressly asked that Mother be "placed back on supervised visitations."

¶37      The court has "broad discretion to decide whether a change of circumstances" warrants a modification of legal decision-making authority and parenting time. *See Backstrand v. Backstrand*, 250 Ariz. 339, 343, ¶ 14 (App. 2020). We perceive no abuse of that discretion here. After considering the evidence both sides presented, the court determined that Mother had successfully addressed her issues with substance abuse and domestic violence. The court did not abuse its discretion in modifying the September 2021 Orders after finding that the circumstances that prompted those orders had been resolved. *See id.* at 344, ¶ 17 ("The superior court may find a material change of circumstances when the change has caused the original decree to serve its purpose no longer."). Further, the court found a material change in circumstances arose after entry of the September 2021 Orders because Father failed to comply with his obligation to consult with Mother in good faith before making decisions affecting the Child. A party's unwillingness or inability to co-parent in good faith may justify the

modification of existing legal decision-making and parenting time orders. *See Gonzalez-Gunter v. Gunter*, 249 Ariz. 489, 492, ¶ 15 (App. 2020) (affirming modification of parenting time orders to reduce father's parenting time based on court's findings, *inter alia*, "that the [parents] had difficulty communicating" and that father "took the children out of state without [the mother's] permission"). The court's findings, which are supported by reasonable evidence, are sufficient to establish the requisite material change justifying modification of the September 2021 Orders.

**C.      The Superior Court Did Not Violate Father's Right to Procedural Due Process.**

¶38      Father argues that the court violated his right to procedural due process by failing to give him "equal time" at the hearing to present his evidence and by denying him the opportunity to fully examine the witnesses by "cut[ting] his time short."

¶39      "The touchstone of due process under both the Arizona and federal constitutions is fundamental fairness." *Backstrand*, 250 Ariz. at 346, ¶ 29 (citation omitted). A parent contesting modification has a due process right "to be heard at a meaningful time and in a meaningful manner." *Volk v. Brame*, 235 Ariz. 462, 468, ¶¶ 19–20 (App. 2014) (citation omitted). "But the due-process right to an adequate opportunity to be heard must be balanced against the superior court's broad discretion to impose reasonable time limits on proceedings and control the management of its docket." *Backstrand*, 250 Ariz. at 346, ¶ 29; *see also* Ariz. R. Fam. Law. P. 22(a); Ariz. R. Evid. 611(a). Whether the superior court afforded Father due process "presents a question of law we review *de novo*." *Backstrand*, 250 Ariz. at 346, ¶ 28. "We will reverse only if the complaining party suffers prejudice as a result of the error." *Walsh v. Walsh*, 230 Ariz. 486, 494, ¶ 24 (App. 2012) (citation omitted).

¶40      Father cites to nothing in the record to support his claim that he was denied sufficient time to present his case. Father has not provided a transcript of the first portion of the evidentiary hearing that was held on August 3, so we presume the missing transcript would support the court's decision. *See Baker v. Baker*, 183 Ariz. 70, 73 (App. 1995) ("A party is responsible for making certain the record on appeal contains all transcripts or other documents necessary for us to consider the issues raised on appeal," and "[w]hen a party fails to include necessary items, we assume they would support the court's findings and conclusions."). The transcript of the continued hearing on December 5 shows that Father was given the opportunity to testify that day. In his briefing on appeal, Father does not

identify any testimony or other evidence that he was unable to present due to unduly restrictive time constraints.

¶41 Father's complaint that the court "cut . . . short" his time to "fully examine the witnesses" is unavailing as well. The transcript of the continued hearing on December 5 reflects that Father asked the CAA several questions on cross-examination and then stated that he had no further questions. When the court offered him the opportunity to cross-examine Mother, he proceeded to do so at some length. After asking Mother about matters such as her alcohol consumption, her participation in court-ordered testing and parenting classes, and alleged domestic violence in her home, Father began a line of inquiry into an event "[a] couple weeks ago" at the Child's new school. Mother described the event as a "medieval fair," at which point Father disputed her answer, characterizing the event as a "talent show." Only when he became argumentative, insisting that "[Mother] knows it was a talent show," did the court cut him off and bring an end to his cross-examination. As the court correctly stated when terminating Father's cross-examination, "whether [the event] was a talent show or a medieval fair" was not "relevant." Because due process does not require the court to "indulge inefficient use of time by parties," *Backstrand*, 250 Ariz. at 347, ¶ 29 (citation omitted), the court did not violate Father's due process rights by terminating his cross-examination once he moved to a line of questioning that could not possibly have any bearing on the court's resolution of the disputed issues.

¶42 In any case, if Father was of the view that he had not been given enough time to present his case, he should have said so at the hearing and made an offer of proof of the evidence that he was purportedly unable to present. *See Gamboa v. Metzler*, 223 Ariz. 399, 402-03 ¶¶ 12, 16-18 (App. 2010) (rejecting appellant's claim that "the trial court violated his due process rights" by allowing insufficient time for cross-examination in part because "he did not request additional time" or "make an offer of proof"). He did not. In his briefing on appeal, he does not identify any evidence he was unable to present or establish how he was prejudiced by his inability to present it. Because, "to merit reversal, a party must show they incurred some harm as a result of a court's time limitations," *id.* at 402, ¶ 17 (cleaned up), Father's failure to identify any prejudice he suffered as a result of time constraints at the hearing is fatal to this claim.

¶43 Father makes a number of other assertions that appear to challenge the court's impartiality. Father asserts, for example, that the court "scoffed at him" when he asked "questions about procedure." He cites to nothing in the record to support this assertion. A review of the transcript of

the continued hearing on December 5 does not support this claim, and, as noted above, Father has not provided us with the transcript of the August 3 proceedings. Father is entitled to no relief on this unsupported claim.

**¶44** Likewise, Father complains that the court "completely disregarded Mother's medical records" and "police records of incidents at Mother's home." The record indicates that certain medical records and a police report were admitted in evidence, and we find no basis for Father's assertion that the court failed to consider them. *See Fuentes*, 209 Ariz. at 55, ¶ 18 (noting that trial court "is presumed to have . . . fully considered" relevant testimony and evidence "prior to issuing its decision"). To the extent Father complains that the court gave these exhibits insufficient weight, we will not "reweigh conflicting evidence" on appeal. *See Estate of Pouser*, 193 Ariz. at 579, ¶ 13.

**¶45** Father complains that he asked the court to "check the docket history in this case to confirm that he had completed the domestic relations education program provision of A.R.S. § 25-352" but the court did not do so. The transcript of the continued hearing on December 5 does not support Father's claim that he asked the court to check the docket to confirm that he had, in fact, filed a certificate that he had completed the class. In any event, the court did not sanction Father for failing to complete the class and so his argument, even if true, entitles him to no relief.

**¶46** Similarly, Father asserts that "Mother had not completed the domestic relations education program and was not held accountable for her noncompliance." In the December 2022 Orders, the court found that neither party "completed the Parent Education Program requirements of A.R.S. 25-352 and/or presented proof of completion as required" and ordered them both to do so. Father does not explain what else the court should have done to hold Mother "accountable" for not completing the class. Since he has failed to meaningfully develop this argument, we decline to consider it further. *See Davis v. Davis*, 230 Ariz. 333, 338, ¶ 26 n.9 (App. 2012) (holding that appellant "waived . . . claim on appeal by failing to elaborate on his argument or support it with citation to legal authority").

**¶47** Finally, Father faults the court, in conclusory terms, for not giving him "[l]atitude" at the hearing since he was "a Pro Se party" while Mother was "represented by counsel." Father's argument is contrary to the well-established principle that "a party who conducts a case without an attorney is entitled to no more consideration from the court than a party represented by counsel, and is held to the same standards expected of a lawyer." *See Kelly v. NationsBanc Mortg. Corp.*, 199 Ariz. 284, 287, ¶ 16 (App.

2000) (as amended). Moreover, Father does not identify any particular "latitude" that he believes he should have been given. He does not, for example, identify any evidence that he was unable to present due to his unfamiliarity with applicable evidentiary or procedural rules. In the absence of any showing of prejudice, his due process claim necessarily fails. *See State v. Dunlap*, 187 Ariz. 441, 450 (App. 1996) ("[P]roof of prejudice is generally a necessary . . . element of a due process claim.") (citation omitted).

**CONCLUSION**

**¶48**        For the foregoing reasons, we affirm.

**¶49**        Mother requests attorney's fees and costs pursuant to A.R.S. § 25-324 and ARCAP 21, citing Father's unreasonable positions on appeal. In our discretion, we grant Mother's request for an award of reasonable fees and costs.



AMY M. WOOD • Clerk of the Court
FILED:    AA

14