IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In Re the Matter of:

LUKAS BACKSTRAND, *Petitioner/Appellee,*

*v.*

KATHY BACKSTRAND, *Respondent/Appellant.*

No. 1 CA-CV 19-0742 FC
FILED 12-24-2020

Appeal from the Superior Court in Coconino County
No. S0300DO201700099
The Honorable Elaine Fridlund-Horne, Judge

**AFFIRMED**

COUNSEL

Loose Law Group, P.C., Phoenix
By Edward J. Walneck
*Counsel for Petitioner/Appellee*

The Wilkins Law Firm, PLLC, Phoenix
By Amy M. Wilkins (argued) & Laura C. Brosh
*Counsel for Respondent/Appellant*

---

**OPINION OF THE COURT**

---

Judge Paul J. McMurdie delivered the Court's opinion, in which Presiding Judge James B. Morse Jr. and Judge Maria Elena Cruz joined.

---

**M c M U R D I E**, Judge:

¶1         Kathy Backstrand ("Mother") appeals from the superior court's order placing her child, Lola, in the primary care of Lukas Backstrand ("Father") and modifying the couple's parenting time. We hold that a court may modify a parenting plan only if it first finds a material change of the circumstances affecting the child's welfare since the last court order. If the court finds a material difference in the circumstances, it then may determine whether a change in the parenting plan will be in the child's best interests. *See* A.R.S. 25-403(A) (listing the factors a court must consider when deciding legal decision-making and parenting time either initially or on a petition to modify). We reject Mother's contention that the court cannot modify parenting time unless it first finds a material change detrimental to the child's welfare.

## FACTS AND PROCEDURAL BACKGROUND

¶2         Lola was born in 2011 while her parents were living in Minnesota. The family moved to Arizona five years later. In March 2017, Father filed for dissolution. After Mother and Father reached agreements on dissolution matters, the court approved a consent decree prepared by the parties in August 2017. While the dissolution proceeding was pending, Father moved back to Minnesota.

¶3         The parties agreed to share joint legal decision-making authority of Lola. They also decided on two different parenting schedules, entitled "Plan A" and "Plan B." Under Plan A, which would apply if Father lived in Minnesota, Lola would live primarily with Mother in Lake Havasu City and attend school there. Father would have parenting time in the summers, during school breaks, and on certain holidays. Under Plan B, which would apply if Father lived in Lake Havasu City, the parents would equally share parenting time. After the court approved and entered the parenting plan, Father did not return to Arizona, and the parties implemented Plan A.

¶4            In April 2018, less than a year after entry of the decree, Mother informed Father that she wanted to move with Lola to Las Vegas, Nevada. Father objected. *See* A.R.S. § 25-411(A) ("[a] person shall not make a motion to modify a legal decision-making or parenting time decree earlier than one year after its date"). Mother did not move at that time. In August 2018, just more than a year after entry of the consent decree, Mother sent Father a letter informing him that she and Lola were moving to Las Vegas. Father again objected and petitioned to prevent Lola's move.

¶5            In his petition to prevent relocation, Father alleged the move was not in Lola's best interests under the factors specified in A.R.S. § 25-408(I). While Father's petition was pending, Mother sent an email to Father stating she planned to move with Lola to Las Vegas on October 3. The day before the scheduled move, Father filed an emergency motion with the court seeking temporary orders enjoining Mother from relocating until further court order. The next day, the court denied the motion, and Mother moved with Lola to Las Vegas and enrolled her in school.

¶6            In response to the move, Father amended his petition to request a modification of legal decision-making and parenting time. Father alleged Mother had created a substantial and continuing change of circumstances by moving that justified modifying legal decision-making and parenting time. Father requested, *inter alia*, that the court make him Lola's primary residential parent and grant Mother long-distance parenting time. The court appointed a family court evaluator and ordered the parties to participate in an evaluation concerning legal decision-making and parenting time. The court-appointed evaluator recommended the court allow Lola to remain with Mother in Las Vegas.

¶7            In July 2019, the court conducted a three-day trial on Father's petition. During the trial, Father questioned the court-appointed evaluator about his process and findings. Father then presented testimony from an expert witness challenging the evaluator's report's evidentiary value and opining on the importance of Lola's relationship with other family members. Father and Lola's paternal grandfather testified about the Minnesota town where Father and his family lived. The testimony revealed their family's involvement in Lola's life, activities available to Lola there, and identified the school she would attend if Father became her primary residential parent. Finally, the court heard extensive testimony concerning Mother's other child, Lola's half-brother Cole, who had lived with Mother, Father, and Lola before the divorce.

¶8         When Mother and Father separated, Cole relocated to Minnesota to live with his father, and Mother voluntarily agreed to terminate her parental rights to Cole. Both Cole's father and Father testified that Cole and Lola had a close relationship, and Cole frequently stayed with Father and Lola for extended periods during Father's parenting time. Father also testified that Cole and Lola's relationship had deteriorated since they began living apart.

¶9         For her part, Mother testified about the reasons she decided to move to Las Vegas. She elaborated on the benefits of her new career, work schedule, and how the increase in income allowed her and Lola to have a better life than in Lake Havasu City. Mother also testified concerning Lola's integration into her new school, extracurricular activities, social life, and living situation. Finally, Mother testified about her fiancé's relationship with Lola.

¶10        Father and Mother each testified about their respective places of residence. Both parents believed the other's home would negatively affect Lola, and both expressed distaste for the environment in the other's community. Father asserted a move to Las Vegas would expose Lola to inappropriate matters. Mother claimed the small town where Father lived would cause Lola to become small-minded. However, neither parent pointed to specific evidence showing that the other's residence was detrimental to Lola's welfare. After the hearing, the court took the matter under advisement.

¶11        In August 2019, the court placed its findings and conclusions on the record. The court first found that "[M]other created [a] change in circumstances that [is] substantial and continuing affecting Lola's best interests by relocating from Lake Havasu City to Las Vegas." Based on this finding, the court then considered and made findings regarding each of the factors outlined in A.R.S. § 25-408(I) and A.R.S. § 25-403(A). The court concluded that it was in Lola's best interests to make Father her primary residential parent and allow her to reside in Minnesota. Accordingly, the court reversed Mother's and Father's roles under the parenting plan and ordered Lola to live and attend school in Minnesota. The court also ordered that Mother be given more parenting time during the summers than the plan initially provided for Father. The court made no other changes to the parenting plan but ordered Father's counsel to prepare a formal written order addressing its ruling. When Father's counsel failed to file the order, the court issued a written order reaffirming and elaborating on its oral findings and conclusions.

¶12 Mother appealed, and we have jurisdiction under A.R.S. § 12-2101(A)(1).

## DISCUSSION

### A. The Superior Court Did Not Abuse Its Discretion by Finding a Material Change of Circumstances Affecting Lola's Welfare.

¶13 Mother first argues Father failed to demonstrate a material change of circumstances affecting Lola's welfare. As a result, Mother asserts the court lacked any basis to modify the original decree. We disagree.

¶14 When presented with a request to modify a dissolution decree's decision-making and parenting-time provisions, the superior court must engage in a two-stage inquiry.[1] "First, the court must ascertain whether there has been a change of circumstances materially affecting the

---

[1] We note that the two-stage approach is inconsistent with A.R.S. § 25-411(J). Arizona adopted a version of the Uniform Marriage and Divorce Act (1970) (amended 1971 and 1973). Under section 409(b) of the uniform act, a parent may not modify a parenting plan unless that parent presents "facts that have arisen since the prior decree or that were unknown to the court at the time of entry of the prior decree" or "that a change has occurred in the circumstances of the child or his [or her] custodian" and the "modification is necessary to serve the best interest of the child." Our legislature did not adopt the change-of-circumstance requirement of the uniform act, opting instead for A.R.S. § 25-411(J)'s directive that a court may modify an existing parenting order "whenever modification would serve the best interest of the child." Despite the statutory change, our caselaw has not addressed the continuing validity of the change-of-circumstance jurisprudence regarding parenting plans. *Cf. Waldecker v. O'Scanlon*, 375 P.3d 239, 249 (Haw. 2016) ("[J]urisprudential concerns regarding repetitive motions cannot be addressed in a manner that conflicts with the requirements of [the Hawai'i family code] that custody should be awarded . . . according to the best interests of the child and any custody award shall be subject to modification or change *whenever* the best interests of the child require or justify the modification or change.") (quotations omitted). This court, however, is bound by our supreme court's precedent. *Sell v. Gama*, 231 Ariz. 323, 330, ¶ 31 (2013) (The lower courts are bound by Arizona Supreme Court decisions, and that court "alone is responsible for modifying that precedent.").

welfare of the child." *Black v. Black*, 114 Ariz. 282, 283 (1977) (citation omitted). Only if it finds such a change in circumstances may it "then proceed to determine whether a change in custody will be in the best interests of the child." *Id.*; *see also* A.R.S. 25-403(A). "[T]he burden is on the moving party to satisfy the court that conditions and circumstances have so changed after the original decree as to justify the modification." *Burk v. Burk*, 68 Ariz. 305, 308 (1949). The superior court is vested with broad discretion to decide whether a change of circumstances has occurred. *Pridgeon v. Superior Court*, 134 Ariz. 177, 179 (1982). "On review, the trial court's decision will not be reversed absent a clear abuse of discretion, i.e., a clear absence of evidence to support its actions." *Id.*

¶15          Here, the court did not abuse its discretion by finding that Lola's relocation to another city in another state was a change of circumstances materially affecting her welfare. It is undisputed that the move placed Lola in a new home, school, and community, where she has and will continue to engage in new activities, form new relationships, and face new challenges. These changes are substantial and continuing.[2]

¶16          The changes affect nearly every facet of Lola's life with Mother, and Mother did not testify that the move was temporary. Whether the changes are ultimately positive or negative is immaterial to the change-of-circumstances inquiry. *See, e.g.*, *Black*, 114 Ariz. at 284 (change of circumstances included that petitioning parent had remarried); *Ward v. Ward*, 88 Ariz. 130, 135–36 (1960) (change of circumstances included age of the child, child's desire to visit the other parent more frequently, and increased distance between the child and noncustodial parent); *Canty v. Canty*, 178 Ariz. 443, 448–49 (App. 1994) (change of circumstances was that joint custody became "logistically impossible"); *see also Burk*, 68 Ariz. at 309 (petitioner not entitled to modification when no evidence existed of change of circumstances showing primary parent was "an unfit person" or that "the welfare of the children would be improved by a modification"). The

---

[2]          The court would have been presented with an entirely different situation if Mother had sought the court's authorization to relocate *before* she moved with Lola to Las Vegas. This court has explicitly held that a *proposed* relocation, by itself, does not constitute a material change of circumstances affecting the child. *Owen v. Blackhawk*, 206 Ariz. 418, 422, ¶¶ 15–16 (App. 2003). So long as a residential parent is willing to remain in the state if the court were to find that relocation is not in the child's best interests, that parent's desire to relocate, by itself, creates no basis to modify any provision of the decree or order. *Id.* at ¶ 16.

court's only task at this initial stage is to determine whether (1) a change of circumstances affecting the child's welfare has occurred and (2) whether the difference is material, or, in other words, whether the change justifies departing from the principles of *res judicata* underlying the order currently in place. *See Black*, 114 Ariz. at 283; *Ward*, 88 Ariz. at 134–35 ("The change of circumstances rule as a limitation on modification of a divorce decree is one aspect of the principle of res judicata.").

¶17 Moreover, Mother's relocation of Lola to Las Vegas also caused a material change of circumstances by undermining several decree provisions. For example, the parties' parenting plan provided that Lola would attend school in Lake Havasu City. By moving Lola to Las Vegas, Mother rendered this provision logistically impossible to enforce. The superior court may find a material change of circumstances when the change has caused the original decree to serve its purpose no longer. *Ward*, 88 Ariz. at 135; *see also Canty*, 178 Ariz. at 448–49; *Hendricks v. Mortensen*, 153 Ariz. 241, 244 (App. 1987) (finding that "[i]t is obvious that the decree must be modified" when one parent remarried and relocated to Texas).

¶18 Whether imposed by the court or agreed to by the parties, the parenting provisions of a decree or other order represent a snapshot of the child's best interests when they are entered. In turn, this snapshot forms the baseline from which future courts assess whether a material change of circumstances has occurred. *See Reid v. Reid*, 222 Ariz. 204, 209, ¶ 18 (App. 2009) (in part, the rationale for A.R.S. § 25-403's requirement for specific findings on the record is to provide a baseline for "any future petitions by either party based on 'changed circumstances'"). Thus, a change that materially reduces or eliminates the effect of a parenting-plan provision constitutes a change of circumstances because that provision no longer advances the child's best interests. Parenting plan provisions that are no longer tailored to the current circumstances force children and parents to either comply with logistically impossible directives or go forward without the measure of stability offered by a defined parenting plan. Under either scenario, the welfare of the child will be affected.

¶19 Accordingly, the court was well within its discretion to find that Lola's relocation to Las Vegas was a material change of circumstances affecting Lola's welfare.

¶20 Relying on our supreme court's decision in *Davis v. Davis*, 78 Ariz. 174, 176 (1954), Mother counters that the court must find the alleged change of circumstances both substantial *and* detrimental to the child's welfare before it may consider changing the parenting plan. Claiming the

evidence presented at trial showed that Mother's move to Las Vegas was beneficial to both Mother and Lola, Mother argues the court should not have proceeded past the change-of-circumstances inquiry.[3] However, *Davis* does not stand for this principle.

**¶21** In *Davis*, our supreme court addressed a superior court order altering a father's parenting time after the child's mother alleged that the child experienced conditions while living with the father that detrimentally affected the child's health, safety, and general welfare. 78 Ariz. at 175. The father argued that no showing had been made of a "substantial change of conditions" since the date of the divorce. *Id.* In addressing this argument, the court held the following:

> Th[e] power to modify the decree is to be exercised only when cogent reasons are shown. Such reasons must constitute facts or conditions unknown at the time of the original decree, or occurring subsequent to the decree. These substantial conditions must detrimentally affect the child whose welfare is the paramount consideration at all times. But all changes in the activities or environment of a minor will not necessarily constitute *a basis for a modification* unless shown to be substantial and detrimental.

*Id.* at 176 (emphasis added) (citations omitted). The court then reviewed the record, found no evidence that the son's living conditions presented unreasonable risks to his health, safety, or welfare, and reversed the superior court's order. *Id.* at 176–78.

**¶22** Although the *Davis* court did not specifically reference the two distinct stages of the modification inquiry, it required both (1) a change

---

[3] Father asserts Mother has waived this argument on appeal because she failed to raise the change-of-circumstances issue as a contested issue within her pretrial statement. Under Arizona Rule of Family Law Procedure 76.1(h), "[a] party waives the right to raise an objection at the trial or hearing if the specific objection to a . . . claim is not raised" in that party's pretrial statement. However, because we conclude the court did not err regarding this issue, we need not address whether waiver applies here. *City of Tempe v. Fleming,* 168 Ariz. 454, 456 (App. 1991) (Whether a litigant can raise on appeal an argument not made in the superior court is procedural, not jurisdictional, and may be suspended at the appellate court's discretion.).

arising from new "facts or conditions" and (2) a resulting detrimental effect on the child. The court's reference to a change of environment as a "basis for a modification," rather than a basis for a finding of changed circumstances, indicates the court was referring to each prong of the two-part modification inquiry when it used the phrase "substantial and detrimental." *See also Pridgeon*, at 179 ("In considering a motion for change of custody, the court must initially determine whether a change of circumstances has occurred since the last custody order. Only after the court finds a change has occurred does the court reach the question of whether a change in custody would be in the child's best interest.").

¶23 Our interpretation is reinforced both by the fact that the two-stage inquiry was already in use when the court ruled in that case, and it is consistent with the current legislative directive. *See Cone v. Righetti*, 73 Ariz. 271, 276 (1952) ("[B]efore the court has authority to change the custody of a minor child it must be shown that there had arisen a change in the conditions or circumstances surrounding the children affecting their general welfare *and* that it would be for their best interests that a change in custody be made.") (emphasis added); A.R.S. § 25-411(J). *Davis*, therefore, aligns with this court's analysis outlined above. A change in environment will permit modification only if the difference is: (1) "substantial," i.e., a change that materially affects the welfare of the child; and (2) "detrimental," i.e., not in the child's best interests after considering the A.R.S. § 25-403(A) factors.

¶24 Under *Davis*, a parent's decision to move with the child to the house next door, without more, would not be a "substantial" change in the child's environment warranting modification. A move to another city, county, or state, on the other hand, could be considered "substantial" but might not be "detrimental" absent evidence that the change in environment does not serve the child's best interests. And concerning the "detrimental" prong of the inquiry, the legislature's statutory framework enacted in the years following *Davis* has clarified how and in what manner the best-interests analysis must be conducted. *See* A.R.S. § 25-403(A) (first adopted as A.R.S. § 25-332 in 1973); A.R.S. § 25-408(I) (first adopted in its current form in 1997). Mother's citation to *Davis*, therefore, does not alter our conclusion.

¶25 Having found a change of circumstances, the superior court then proceeded to the second step of the modification inquiry: whether the decree should be modified based on the court's assessment of the child's best interests as provided by the relevant statutory framework—in this case, A.R.S. §§ 25-403(A) and -408(I). *See Layne v. LaBianca ex rel County of*

*Maricopa*, 249 Ariz. 301, 302–03, ¶¶ 5–7 (App. 2020) (the superior court must consider whether the decree should be modified based on the court's assessment of the child's best interests as provided by the relevant statutory framework of A.R.S. §§ 25-403(A) and -408(I)). At this step, the court was required to assess the present circumstances and determine whether Lola's best interests were to modify the parenting plan. This assessment included both the positive and negative impacts of Lola's relocation to Las Vegas. *See* A.R.S. § 25-411(J) ("[t]he court may modify an order granting or denying parenting time rights whenever modification would serve the best interest of the child"); *Black*, 114 Ariz. at 284 ("While the factors that establish a change of circumstances . . . are not always completely dispositive of the question of what will be in the child's best interests, they are highly relevant.").

¶26 Mother argues that the court failed to give due deference to the original decree in making this determination. Specifically, Mother contends the court could not consider the presence of Lola's extended family in Minnesota to determine whether a change of circumstances occurred or whether the modification was warranted because that fact already existed when the original decree was entered. Mother is correct that "[t]he allegation and proof of some additional change occurring since the entry of the prior order is prerequisite to any later modification." *Pridgeon*, 134 Ariz. at 180 (quoting *Harder v. Harder*, 552 P.2d 852, 854 (Or. App. 1976)). But once the court found that Lola's relocation to Las Vegas caused a material change of circumstances affecting her welfare, it was statutorily required to consider "all factors that are relevant to the child's physical and emotional well-being." A.R.S. § 25-403(A). This includes considering "the interaction and interrelationship of the child with . . . the child's siblings and any other person who may significantly affect the child's best interest." A.R.S. § 25-403(A)(2).

¶27 During the trial, the court heard extensive testimony by Father and Lola's paternal grandfather concerning Lola's *present-day* relationship with her extended family. Cole's father and Father also testified about Lola and Cole's close relationship and the extended time they have been able to spend together in Minnesota during Father's parenting time. Therefore, reasonable evidence supports the court's conclusion that the best-interest factors, particularly A.R.S. § 25-403(A)(2), weighed in favor of modifying the decree to make Father Lola's primary residential parent. We will not substitute our judgment by reweighing the evidence underlying the court's best-interests analysis. *See Vincent v. Nelson*, 238 Ariz. 150, 155, ¶ 18 (App. 2015) ("[T]he family court is in the best position to judge the credibility of witnesses and resolve conflicting

evidence, and appellate courts generally defer to the findings of the family court.").

## B.    The Superior Court Provided Mother with Due Process.

**¶28**    Mother also contends the superior court allowed Father two and a half days to present his case but limited her case to only 50 minutes, thereby depriving her of due process. Mother asserts this imbalance was fundamentally unfair and skewed the court's findings and conclusions in Father's favor. She also contends the inadequate time the court allowed her prevented her from recalling and examining the court-appointed family evaluator, whom Father had questioned extensively during his case. Whether the superior court afforded Mother due process presents a question of law we review *de novo*. *Jeff D. v. DCS*, 239 Ariz. 205, 207, ¶ 6 (App. 2016).

**¶29**    "The touchstone of due process under both the Arizona and federal constitutions is fundamental fairness." *Jeff D.*, 239 Ariz. at 207, ¶ 7 (quoting *State v. Melendez*, 172 Ariz. 68, 71 (1992)). At a minimum, due process requires that litigants be heard "at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). But the due-process right to an adequate opportunity to be heard must be balanced against the superior court's broad discretion to impose reasonable time limits on proceedings and control the management of its docket. Ariz. R. Fam. Law P. 22(a) ("The court may impose reasonable time limits appropriate to the proceedings."); Ariz. R. Evid. 611(a) ("[t]he court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence"); *Findlay v. Lewis*, 172 Ariz. 343, 346 (1992) ("A trial court has broad discretion over the management of its docket. Appellate courts do not substitute their judgment for that of the trial court in the day-to-day management of cases."). Thus, this court has held that "[t]hough the court may impose time limits that appear reasonable in advance of a proceeding, those limits become unreasonable if they prove insufficient to allow a substantive hearing." *Volk v. Brame*, 235 Ariz. 462, 468, ¶ 21 (App. 2014). But this does not mean "that the court must indulge inefficient use of time by parties or their counsel," and whether additional time is necessary remains committed to the court's discretion. *Id.* at 469, ¶ 22.

**¶30**    After reviewing the record, we conclude the court's management of the proceedings did not violate Mother's due-process rights. At the outset, Mother's characterization of an "imbalance" in the time allotted to each party ignores the fact that Mother's trial counsel

cross-examined nearly all of Father's witnesses extensively over the first two days of trial—especially Father's expert. Nevertheless, when it became apparent that the remaining time initially set aside for the trial would not allow Father to finish his case or provide Mother an adequate opportunity to present her witnesses and evidence, the court extended the trial by nearly a full day. The court informed both parties of the date and time allotted for the trial, and both agreed without objection.

¶31        Despite being fully aware of the time allotted and that the court had already extended the trial once, Mother's trial counsel again chose to undertake an extensive cross-examination of Father. Before the cross-examination was complete, the court informed the parties that only an hour remained, and it did not intend to extend the trial a second time. Mother's counsel objected. In response, the court noted that Mother's counsel had used more than an hour and a half to cross-examine Father and stated that it believed "everybody was aware of how much time was set for trial and has used their time accordingly." But the court guaranteed Mother 50 minutes of the remaining hour to ensure that she could present her case, including her testimony. In doing so, the court limited Father's time to cross-examine Mother, noting that Father had used a significant amount of time for his testimony.

¶32        After completing direct and redirect examination of Mother within the time remaining, Mother's trial counsel did not renew the objection, request additional time, or specify what other evidence was needed to present Mother's case adequately. Nor does Mother identify on appeal additional evidence the superior court's time restrictions prevented her from offering at trial. Under these circumstances, we have no difficulty concluding the court did not deprive Mother of a meaningful opportunity to be heard, nor did it act unreasonably in refusing to provide her with additional time. It is incumbent upon counsel to manage the time allotted and balance cross-examination's strategic value against the time necessary to present testimony and other evidence. *Cf. Nicaise v. Sundaram*, 244 Ariz. 272, 277, ¶ 15 (App. 2018) (finding no denial of due process when brevity of parent's testimony "was the product of her counsel's strategic decisions regarding use of time at trial"), *vacated in part on other grounds*, 245 Ariz. 566, 569, ¶ 15 (2019). The court did not deny Mother due process.

## ATTORNEY'S FEES AND COSTS

¶33        Both parties request an award of attorney's fees under A.R.S. § 25-324. In the exercise of our discretion, we deny both requests. As the

successful party on appeal, Father is entitled to recover his costs upon compliance with Arizona Rule of Civil Appellate Procedure 21.

## CONCLUSION

¶34 We affirm the superior court's order.



AMY M. WOOD • Clerk of the Court
FILED: AA