NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Matter of:

PATRICK T. MURPHY, *Petitioner/Appellant/Cross-Appellee*,

*v.*

SARA C. STIDHAM, *Respondent/Appellee/Cross-Appellant*.

No. 1 CA-CV 22-0692 FC

FILED 08-22-2024

Appeal from the Superior Court in Maricopa County
No. FC2018-007045
The Honorable Tracey Westerhausen, Judge

**VACATED AND REMANDED**

COUNSEL

Berkshire Law Office PLLC, Tempe
By Keith Berkshire, Alexandra Sandlin
*Counsel for Petitioner/Appellant/Cross-Appellee*

Schmillen Law Firm PLLC, Scottsdale
By James R. Schmillen, Erica Leavitt
*Counsel for Respondent/Appellee/Cross-Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Michael J. Brown delivered the decision of the Court, in which Judge Andrew M. Jacobs and Judge Samuel A. Thumma joined.

---

**B R O W N**, Judge:

¶1        Patrick Murphy ("Father") appeals the denial of his petition to modify parenting time.  Sara Stidham ("Mother") cross-appeals child support orders.  Because Father established that material changes of circumstances affecting the children's best interests occurred, we vacate the court's denial of Father's petition.  We also vacate the resulting child support orders.

## BACKGROUND

¶2        The parties were in a non-marital relationship for approximately six years, and they are the biological parents of A.M. and J.M., born in 2014 and 2019.  When the parties met in 2011, Mother was a massage therapist, and Father was a coach for the San Diego Padres.  In 2015, Father became a coach for the Milwaukee Brewers, requiring him to live in Wisconsin during the baseball season.  For the next few years, Mother and A.M. traveled with Father between Arizona and Wisconsin each summer.

¶3        The parties' relationship deteriorated, however, after Mother was arrested in Wisconsin for shoplifting in August 2018.  While she was in custody, the parties had several recorded "jail call" conversations in which she confessed to the shoplifting charges and admitted she had stolen from Father throughout their relationship.  For instance, Mother admitted (1) selling stolen goods and doctoring her bank records to conceal her income from Father; (2) cashing checks he gave her that were intended to pay for her monthly health insurance premiums even though at the same time she had been granted coverage under the Arizona Health Care Cost Containment System; and (3) overcharging him for A.M.'s tuition each month.

¶4        The following month, in Arizona, Father petitioned to establish paternity, legal decision-making, parenting time, and child support.  Mother responded, and they proceeded to litigate custody issues

for the next year. During this litigation, Mother and Father had their second child, J.M.

¶5            The parties eventually agreed to a resolution, and in June 2019 they signed a consent decree and comprehensive parenting plan, which the superior court entered as a final judgment ("Decree"). The Decree awarded Father sole legal decision-making authority and provided for equal parenting time under "a schedule that took into account Father's coaching schedule." The Decree stated that the parties would "remain flexible with respect to parenting time, especially during the offseason, when Father's schedule allows for more parenting time." But the Decree also mandated that the parties "shall reside within 20 miles of each other, so long as the [c]hildren remain minors, unless otherwise agreed," and that "Mother agrees to relocate if Father's employment requires him to relocate" ("Relocation Provision"). Finally, the Decree ordered that if "Mother is convicted of a crime, her parenting time shall be immediately supervised by a mutually-agreed upon supervisor" ("Crime Clause"). Because Mother agreed to live "dependent on Father's employment at any given time[,]" the parties agreed to a significant upward deviation from the Child Support Guidelines, with Father paying $3,500 per month, subject to additional increases if his income exceeded predetermined amounts.

¶6            During the 2020 baseball season, Mother refused to travel with the children to Wisconsin. In June 2020, Father filed a petition to modify child support and later that summer he filed a petition to modify parenting time, alleging that since the Decree was entered the parties' relationship had "broken down" and they had been unable to agree on the terms of the parenting plan currently in place.

¶7            The superior court held an evidentiary hearing on child support in August 2020, and reduced Father's obligation to $1,924 per month, effective July 1, 2020. The court also set a review hearing and ordered the Family Conference Center (the court's system for documenting support and parenting time agreements) to provide an arrearage calculation. Several weeks later, a Wisconsin court found Mother guilty on three charges of shoplifting that had occurred in August 2019.

¶8            At the October 2020 review hearing, the superior court considered the arrears calculation, which showed that Father owed arrears of $24,848 and interest of $804 for May 2019 through August 2020. This calculation, however, did not include payments that Father had made directly to Mother from January 2020 through August 2020. Ultimately, the court found that Father was current on child support for July, August, and

September 2020, but did not address Father's assertion that he had overpaid for the months of July and August by a total of $3,152. The court declined to further address child support arrears issues because Father's petition to modify parenting time, which also involved child support, was pending before a different judge.

**¶9**      In the parenting time matter, Father alleged that since entry of the Decree, there had been substantial and continuing changes in circumstances that required modification of the current orders. He requested, *inter alia*, that Mother's parenting time be supervised under the Crime Clause. For example, he claimed she had engaged in criminal activity since the Decree, resulting in the three 2019 shoplifting convictions in Wisconsin (while A.M. was with her as she shoplifted) and a separate arrest on felony theft and fraud charges in Arizona. He also asserted that their ability to co-parent had changed substantially, and for the worse, because of Mother's continuing participation in criminal activity and her refusal to follow the Relocation Provision.

**¶10**      Father also asked the court to reappoint Dr. David Weinstock to "finish the full family assessment he started in 2019." The court ordered the parties to "file an agreement as to the evaluator or their separate proposed evaluators." Father recommended Dr. Weinstock and Mother made an untimely recommendation of two evaluators. The court then appointed Dr. Weinstock to conduct a comprehensive family evaluation.

**¶11**      In January 2021, Mother filed a response to Father's petition to modify parenting time and a counter-petition requesting the court modify legal decision-making and enforce child support. Father then served Mother with a letter stating his intent to relocate with the children to Wisconsin, and she petitioned the court to prevent Father from relocating.

**¶12**      After various pretrial filings, in February 2022, the superior court held a two-day trial on the parties' three pending petitions. During the trial, Father questioned Dr. Weinstock about his findings in the family assessment. Dr. Weinstock expressed concerns about Mother's honesty, mental health, shoplifting, and her relationship with R.S., her 17-year-old son from a prior relationship. He opined that "if Mom doesn't change course, it does not bode well for [the children's] futures." He concluded, however, that the children were not at an imminent risk of harm in Mother's care and recommended against supervised parenting time. His testimony was consistent with his written assessment, which stated that "[g]iven what appears to be a lack of imminent harm, supervision [is] not recommended."

¶13 Father acknowledged that he and Mother had been able to work together each year to schedule his make-up parenting time during the offseason. In his notice of intent to relocate, Father had asserted that he was "Required to [relocate] by circumstances of [his] employment." But as Father explained at trial, Mother told him that "she didn't have to go" to Wisconsin for the baseball season.

¶14 Father also testified about Mother's history of shoplifting and that she had stolen from him. He stated that after she was arrested in 2018, she told him about "everything," including her illegal massage business, which he described as "sex work." He explained that he believed she was remorseful for her actions, but that because things had begun "spiraling out of control" and given "her history," the parties included the Crime Clause in the Decree. Father explained that when he found she was stealing again, he realized the actions he was taking were not working and he was worried Mother was "going to raise [the children] without the understanding of what's right and wrong."

¶15 Mother testified she has a close relationship with the children. She explained she was concerned that A.M. was falling behind in school because of his travel to Wisconsin during baseball season. She complained about Father not involving her in his decision to have A.M. see a therapist, but spoke well of Father's parenting and was generally supportive of the children's relationships with him. Mother did not contest the evidence showing her shoplifting convictions, but instead emphasized that she would not be serving any jail time. Although not disputing that she was subject to the Relocation Provision, Mother explained that it was not in the children's best interests to relocate to Wisconsin on a permanent or temporary basis.

¶16 In April 2022, the court issued an order denying Mother's petition to modify legal decision-making. The court also denied Father's petition to modify parenting time, noting that his allegations were "generally the same or similar to those known and/or of concern to Father prior to his entering the [Decree] in June 2019." The court further noted that "[t]he parties have used an essentially equal parenting time plan, with 'make-up' days for Father during the off-season." The court concluded that "[n]o one testified as to a qualifying change of circumstance[s] for parenting time and the parties' current plan is affirmed." The court modified Father's monthly child support obligation to $846, effective May 1, 2022.

¶17 The parties filed post-trial motions to clarify and reconsider the April 2022 order. In October 2022, the court entered rulings on the

outstanding motions. As relevant to this appeal, the court found that Father did not owe any child support arrears to Mother. The court also found that the April 2022 child support order should not have included the children's travel expenses as "'extraordinary' child-related expenses." Based on these rulings, the court issued a new child support order effective November 1, 2022. Father timely appealed, and Mother timely cross-appealed. We have jurisdiction under A.R.S. § 12-2101(A)(2).

## DISCUSSION

**¶18** Father argues the superior court abused its discretion by finding that he failed to demonstrate a "qualifying change of circumstances" warranting a modification of the parenting plan. On cross-appeal, Mother argues the court's November 2022 child support order contains clerical errors and Father's evidence was insufficient to justify the court's ruling that he owed no child support arrears.

**¶19** We review the superior court's denial of Father's petition to modify parenting time for an abuse of discretion. *See Backstrand v. Backstrand*, 250 Ariz. 339, 343, ¶ 14 (App. 2020). We also review child support orders for an abuse of discretion, accepting the court's findings of fact unless clearly erroneous. *Engel v. Landman*, 221 Ariz. 504, 510, ¶ 21 (App. 2009). We may affirm the court's ruling for any reason supported by the record. *Forszt v. Rodriguez*, 212 Ariz. 263, 265, ¶ 9 (App. 2006).

## I.     Petition to Modify Parenting Time

**¶20** When considering a petition to modify parenting time orders, the superior court engages in a two-step analysis by determining (1) whether a change in circumstances occurred that materially affects the children's welfare and, if such a showing is made, (2) whether the children's best interests require a change in parenting time. *Christopher K. v. Markaa S.*, 233 Ariz. 297, 300, ¶ 15 (App. 2013) (citations omitted). The court has broad discretion to determine whether such a change of circumstances has occurred. *See Backstrand*, 250 Ariz. at 343, ¶ 14.

**¶21** Father contends the court abused its discretion by denying his petition because Mother's response to his petition and her pretrial statement agreed that the disputed issue was not *whether* the parenting plan needed to be modified, but instead, *how* the parenting plan should be modified. Nothing in the record shows the parties agreed that parenting time orders needed to be modified. But even if there were an agreement, neither the agreement nor the parties' filings would have overridden the court's independent authority (and obligation) to determine whether there

was a material change in circumstances affecting the children's welfare. *See* A.R.S. § 25-411(J); *Christopher K.*, 233 Ariz. at 300, ¶ 15.

### A. Mother's Criminal Conduct

**¶22** Turning to the merits, Father contends the superior court abused its discretion because Mother's continued involvement in illegal activity merited a finding that the parties' circumstances had changed since 2019 in a way that materially affected the children. Father points to evidence showing that after the Decree was entered, Mother was found guilty on three shoplifting charges in Wisconsin, including acts of shoplifting committed while A.M. was physically present, and was charged with felony theft in Arizona.

**¶23** The parenting provisions of a decree create a snapshot in time that forms a baseline to assess whether future actions will create a material change of circumstances. *See Backstrand*, 250 Ariz. at 344, ¶ 18; *Reid v. Reid*, 222 Ariz. 204, 209, ¶ 18 (App. 2009) (explaining the requirement for findings on the record is to provide a baseline for "any future petitions by either party based on 'changed circumstances'"). At trial, Father had the burden to prove "that conditions and circumstances have so changed after the original decree as to justify the modification." *Backstrand*, 250 Ariz. at 343, ¶ 14 (citation omitted). He needed to show there was a change in circumstances affecting the welfare of the children and prove that the change justified a departure from the underlying order. *Id.* at ¶ 16.

**¶24** The Crime Clause, which Mother agreed to, created a baseline for evaluating whether Mother's future criminal conduct would violate the Decree. Mother's 2020 shoplifting convictions expressly triggered the provision requiring supervised visitation. In agreeing to the Crime Clause, Mother knew precisely what consequences could follow if she violated it by engaging in criminal activity. And to prove that violation, all Father needed to show was that Mother was "convicted of a crime." He met that burden by presenting evidence of Mother's 2020 shoplifting convictions, which the court addressed and characterized as "disturbing" but determined that her behavior was "generally the same or similar to those known and/or of concern to Father" before he entered the Decree. The court erred in failing to recognize that Mother's 2020 shoplifting convictions constituted a material change in circumstances.

**¶25** Moreover, Mother's criminal behavior had a detrimental impact on the children's best interests and allowing her to continue that behavior without any consequence to her parenting time rights diminishes,

if not eliminates, the Crime Clause. *See Id.* at 344, ¶ 18 (noting that a "change that materially reduces or eliminates the effect of a parenting-plan provision constitutes a change of circumstances because that provision no longer advances the child's best interests"). Thus, the court erred in finding that Father failed to meet his burden because it failed to account for the consequences of Mother's post-decree criminal activity.

**¶26** Finally, Mother does not dispute that the Crime Clause is in the children's best interests. Nonetheless, the court failed to hold Mother accountable for her criminal behavior, i.e., conviction for shoplifting in 2020, and her later arrest for four felony offenses. Even without the Crime Clause, Mother's participation in criminal conduct itself constitutes a material change of circumstances because it is not in a child's best interests. This is especially so given that Mother conducted at least some of these activities with at least one of the children present. We conclude that Father met his burden of showing a material change in circumstances affecting the children's welfare. The court therefore erred in failing to enter appropriate orders to address Mother's continued behavior that violated the Decree and was contrary to the children's best interests.

### B. Breakdown in Ability to Co-Parent

**¶27** Father also contends that the breakdown in their ability to co-parent under the parenting plan constitutes a material change in circumstances. For example, Father argues that Mother's refusal to "relocate with Father or travel during the baseball season" qualifies as such a change.

**¶28** The superior court found that "Mother's refusal to travel to Wisconsin for the 2020 baseball season pretty much triggered the current controversy. Her refusal was contrary to the [R]elocation Clause of the [Decree] and she did it without first seeking a modification of that clause." Nonetheless, the court rejected Father's assertion that Mother's refusal constituted a material change in circumstances.

**¶29** Similar to the provision imposing consequences if Mother violated the Crime Clause, the Decree imposed a condition that the parents "shall reside within 20 miles of each other" and Mother needed to "relocate if Father's employment required him to relocate." Although Mother presented evidence that Father was given adequate make-up parenting time for her refusal to relocate to Wisconsin, that does not change the Decree's plain language.

¶30 The court erred in concluding that Father failed to show a material change in circumstances affecting the children's welfare. In doing so, the court necessarily failed to enforce the Crime Clause and the Relocation Provision. *See Id.* at 344, ¶ 18. If Mother believed that those two conditions should have been modified based on a material change of circumstances, she needed to seek to modify them before she violated those conditions. Stated differently, Mother could not simply ignore what she expressly bargained for by continuing to engage in conduct that violates the Decree. *See* A.R.S. § 25-411. Because the Decree requires that Mother face the consequences of her decisions when those decisions violate the Decree and materially affect the children's best interests, we vacate the order denying Father's petition to modify.

### C. Harmless Error

¶31 Mother contends that even if the superior court erred by finding there was no material change in circumstances, the error was harmless because the court made written findings on each best interests factor related to its order affirming the 2019 parenting plan. Father counters that both he and Mother had submitted proposed parenting plans in their pretrial statements, and that the court's role was limited to deciding which of their parenting plans was in the children's best interests.

¶32 Error is harmless where this court "can say beyond a reasonable doubt that the error did not contribute" to the court's decision. *Alice M. v. Dep't of Child Safety*, 237 Ariz. 70, 73, ¶ 12 (App. 2015) (citation omitted). After finding there was no qualifying change in circumstances, and affirming the parenting plan on that ground, the court proceeded to make written findings on the best interests factors under A.R.S. §§ 25-403(A), -403.03, -403.04, -403.05 & -408 as they relate to legal decision-making and parenting time. The court's findings as to the children's best interests, however, were conditioned on there being no material change in circumstances. Because the court erred in finding there was not a material change in circumstances, on remand the court must reweigh the best-interests factors through that lens. Thus, the error here was not harmless.

## II. Child Support

### A. Clerical Errors

¶33 Mother argues the superior court made two clerical mistakes in calculating child support: (1) the November 2022 child support order incorrectly required her to pay 13% of the children's travel expenses, and

(2) the order had the wrong effective date. The April 2022 child support order went into effect on May 1, 2022. The November 2022 order corrected the errors in the April 2022 order and should have had the same effective date as the April 2022 order. Because Father concedes that these errors occurred, on remand the court must correct them. And to the extent a change in the parenting time has an effect on child support, a new calculation of child support may be required.

## B.      Child Support Arrears

**¶34**          Mother next argues the superior court abused its discretion when it found Father owed her no child support arrears. At the evidentiary hearing, Father presented canceled checks reflecting his direct child support payments to Mother. He also testified about an unsigned lease agreement, which the court admitted into evidence "[t]o the extent that it might pertain to reasonableness[.]" The agreement required Mother to pay Father $1,000 in rent each month for the use of his guesthouse. Father's canceled checks show that he deducted $1,000 from his child support from January 2020 through May 2020 for "rent." Mother testified that she did not agree to him reducing child support, but she still deposited these checks because she was not working.

**¶35**          In its April 2022 order, the superior court did not rule on whether Father owed child support arrears. Father moved to clarify, and the court ruled that "[b]ased on testimony and supporting evidence . . . Father owes Mother no arrearages."

**¶36**          Parents are required to pay child support through the child support clearinghouse. A.R.S. § 25-510(A); A.R.S. § 46-441(B), (H). The superior court may, however, give credit for direct payments that the paying parent made as, and the receiving parent knowingly accepted as, child support payments. *Schultz v. Schultz*, 243 Ariz. 16, 18–19, ¶¶ 5, 9 (App. 2017). By statute:

> Any direct payments not paid through the clearinghouse or any equitable credits of principal or interest permitted by law and allowed by the court after a hearing shall be applied to support arrearages as directed in the court order. *The court shall make specific findings in support of any payments or credits allowed.* If the court order does not expressly state the dates the payments or credits are to be applied, the payments or credits shall be applied on the date of the entry of the order that allows the payments or credits.

A.R.S. § 25-510(G) (emphasis added). Here, the court erred by concluding that Father owed no child support arrears without making specific findings to support its decision.

¶37 On remand, the superior court should determine whether to credit Father with $1,000 per month for Mother's use of the guesthouse from January through May 2020. The court should also address Father's assertion that he overpaid child support in July and August 2020 by $3,152. Finally, the court should consider the arrears that will result from our holding that the effective date for the November 2022 child support order was May 1, 2022. And, to the extent A.R.S. § 25-510(G) applies, the court will need to make specific findings to support its decision.

## III. Attorneys' Fees and Costs on Appeal

¶38 Both parties request attorneys' fees under A.R.S. § 25-324. After considering the relative financial resources of the parties and the reasonableness of the positions they asserted on appeal, A.R.S. § 25-324(A), we decline to award attorneys' fees to either party. As the successful party on appeal, Father is awarded taxable costs subject to compliance with ARCAP 21.

## CONCLUSION

¶39 We vacate the superior court's order denying Father's petition to modify parenting time and the child support orders. We remand for further proceedings to address Father's petition to modify parenting time and for recalculation of child support consistent with this decision.



AMY M. WOOD • Clerk of the Court
FILED:    AGFV