NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

JENNIFER GONZALEZ (f/k/a JENNIFER CAMPOS-MARTINEZ),
*Petitioner/Appellant*,

*v.*

BOYD K. MARTINEZ, *Respondent/Appellee*.

No. 1 CA-CV 25-0114 FC

FILED 02-12-2026

Appeal from the Superior Court in Yuma County
No. S1400DO202200595
The Honorable Eliza B. Johnson, Judge *Pro Tempore*

**AFFIRMED IN PART; VACATED AND REMANDED IN PART**

APPEARANCES

Jennifer Gonzalez, Phoenix
*Petitioner/Appellant*

Schneider & Onofry, P.C., Phoenix
By Maria C. Lomeli, Jonathan D. Schneider
*Counsel for Respondent/Appellee*

---

**MEMORANDUM DECISION**

Presiding Judge D. Steven Williams delivered the decision of the Court, in which Judge Andrew M. Jacobs and Judge Michael S. Catlett joined.

---

**W I L L I A M S**, Judge:

**¶1**        In this post-decree proceeding, Jennifer Gonzalez ("Mother") appeals from the order modifying legal decision-making authority and parenting time and ordering her to pay a community debt. We affirm the superior court's finding of changed circumstances but vacate and remand the modified legal decision-making and parenting time orders because the superior court did not address the evidence of domestic violence. We also vacate the debt allocation.

## FACTUAL AND PROCEDURAL BACKGROUND

**¶2**        Mother and Boyd Martinez ("Father") have two children. In 2022, the superior court entered a consent decree dissolving the parties' marriage. The decree provided each party with joint legal decision-making authority for the children but stated that Mother would have "final" say. It also stated Mother: (1) could decide "where the children will live without [Father's] consent," (2) would not move the children out of state, and (3) would give Father one month notice if she left Yuma. According to the parenting plan, Father had parenting time any non-workday and every other Friday and Saturday from four to nine p.m.

**¶3**        The consent decree also awarded the marital residence to Mother with the condition that she remove Father's name "from the marital home[.]" The decree identified several community debts and allocated them to either Mother or Father. Additionally, each party was ordered to "pay for the debt in his or her name, and such debt is ordered as the sole and separate debt of each party's name on the debt." The decree did not list the community debt for solar panels attached to the marital home.

**¶4**        In early 2023, less than three months after the decree was issued, Mother provided notice to Father of her intent to relocate with the children to Phoenix. Father objected, claiming Mother's petition was premature since A.R.S. § 25-411(A) generally prohibits modifications of legal decision-making or parenting time orders less than one year after the

decree was issued. The court denied Mother's relocation request as premature and found no grounds to allow an early petition to modify.

¶5             Within months, Mother filed a second notice to relocate the children to Phoenix. This notice was filed just short of one year from the date the decree issued. Father objected, arguing this petition was also premature and contrary to the children's best interests. Mother moved to dismiss Father's objection because the consent decree allowed her to relocate the children without his consent so long as they stayed in Arizona. The court agreed and dismissed Father's opposition ("2024 order").

¶6             Before the superior court issued the 2024 order, Father petitioned to enforce the marital residence refinancing provision in the decree. The court scheduled an evidentiary hearing on this enforcement petition for October 2.

¶7             Before that hearing, Father petitioned to modify parenting time and child support. He argued that Mother's impending move to Phoenix constituted a significant and continuing change in circumstances. He asked the court to consider the modification petition at the upcoming October hearing on the enforcement petition.

¶8             In August 2024, Father amended his petition to modify parenting time, adding a request to modify joint legal decision-making authority so Mother no longer had "final say." He also moved for temporary orders asking for the same relief. The superior court declined to issue temporary orders because it could not schedule a separate hearing earlier than the upcoming October hearing. The court's order made no mention of Father's amended petition to modify.

¶9             Mother moved to strike the amended petition to modify or, in the alternative, to continue the legal decision-making authority issue to a later date. She argued that Father did not seek the court's permission to amend his petition, which is required when a hearing has been scheduled. *See* Ariz. R. Fam. Law P. 28(a)(2). Before the court ruled on the motion to strike, the parties stipulated to continue the legal decision-making modification issue to a later date and not address it at the upcoming hearing. Based upon that stipulation, the court vacated the October 2 hearing and scheduled a hearing on October 30 to address the petition to enforce and the petition to modify legal decision-making, parenting time, and child support.

¶10            Following the October 30 evidentiary hearing, the superior court found a substantial and continuing change in circumstances given

that Mother and the children now live in Phoenix. After considering several factors set forth in A.R.S. § 25-403(A), the court modified joint legal decision-making so Mother no longer had final say. It also modified parenting time to a long-distance schedule and modified child support accordingly. The court ruled that Mother was responsible for the solar panel debt because the panels were part of the marital residence, which she received in the decree.

¶11   Mother timely appealed. We have jurisdiction under Article 6, Section 9, of the Arizona Constitution and A.R.S. § 12-2101(A)(1).

## DISCUSSION

### I.  Legal Decision-Making Authority and Parenting Time Orders

#### A.  There Is No Horizontal Appeal.

¶12   Mother argues the order finding her move constituted a change in circumstances is an improper horizontal appeal from the 2024 order dismissing Father's objection to her second relocation notification.

¶13   This is no horizontal appeal because the orders address different issues. *See Powell-Cerkoney v. TCR-Montana Ranch Joint Venture, II*, 176 Ariz. 275, 278–79 (App. 1993) (explaining that a horizontal appeal occurs when a second trial judge is asked to reconsider the decision of another trial judge in the same matter, under no new circumstances and where no other reason warrants reconsideration).

¶14   The 2024 order rejected Father's argument that Mother's relocation notice was a premature petition to modify. This was correct because the consent decree allowed Mother to relocate the children without first obtaining Father's consent. Mother had a right to move to Phoenix. After the move, Father petitioned to modify legal decision-making and parenting time arguing that the move, and Mother excluding him from decision-making, constituted changed circumstances. The order on appeal resolved Father's petitions to modify, which were based on changed circumstances arising *after* the 2024 order.

¶15   According to Mother, her relocation cannot constitute a changed circumstance because the 2024 order stated: "The Decree does not indicate that parenting time for Father would change in any way regardless of Mother remaining in Yuma or relocating anywhere else in Arizona." We disagree. The 2024 order did not address whether relocation was a changed circumstance. Instead, it concluded, consistent with the decree, that Mother

need not show grounds to modify the decree or wait one year from the decree to relocate. The quoted language recognizes the parties' obligation to comply with the existing parenting time orders unless modified. Father's later modification petitions did not ask the court to reconsider any of these conclusions. Therefore, the 2024 order did not address the issues presented in Father's later modification petitions. There was no horizontal appeal.

### B. The Superior Court Properly Considered the Amended Petition to Modify.

**¶16** Mother argues the superior court erred in considering Father's amended petition to modify.[1] She contends that Father could not amend his petition without permission from the court. To be sure, Arizona Rule of Family Law Procedure ("ARFLP") 28(a)(2) provides that a party must get court permission to amend a pleading if a hearing on the pleading has already been set. But after Mother moved to strike Father's amended petition, the parties stipulated to address legal decision-making later. By agreeing to address this issue later, Mother waived any objection to the amendment.

**¶17** Even if Mother's agreement did not constitute a waiver, the superior court notified the parties that the October 30 hearing would address legal decision-making authority and parenting time. By scheduling a hearing on legal decision-making, the court implicitly granted leave to amend. Moreover, Mother did not object when the court notified the parties that the October 30 hearing would include the legal decision-making issue. In fact, Mother's pre-hearing statement addressed legal decision-making without objection.

**¶18** The parties also litigated the issue at the hearing. ARFLP 28(b)(2) provides for an automatic amendment of a pleading when an issue is tried by the parties' express or implied consent. *See In re McCauley's Estate*, 101 Ariz. 8, 17 (1966) (discussing analogous Arizona Rule of Civil Procedure 15(b)). Finally, "[a]n amendment nonetheless is permitted absent a showing of 'prejudice, i.e., surprise.'" *Parker v. City of Tucson*, 233 Ariz. 422, 439, ¶ 51 (App. 2013) (discussing Arizona Rule of Civil Procedure 15(b)) (quoting *McCauley*, 101 Ariz. at 18). Mother has shown no prejudice or surprise.

---

[1] Mother claims the superior court denied Father's amended petition in the order filed August 12, 2024. Not so. This order denied Father's request for temporary orders and did not mention the amended petition to modify or Mother's motion to strike.

Therefore, the court properly considered Father's request to modify legal decision-making authority.

### C.     Changed Circumstances Exist.

**¶19**     A parent seeking to modify a legal decision-making or parenting time order must first show "a change of circumstances materially affecting the welfare of the child." *Backstrand v. Backstrand*, 250 Ariz. 339, 343, ¶ 14 (App. 2020) (citation modified). If the superior court finds such a change exists, then it determines whether a modification is in the child's best interests. *Id.* The court has broad discretion to decide whether a change of circumstances exists that justifies modifying legal decision-making authority and parenting time. *Id.* We will affirm a court's order absent a clear abuse of that discretion. *Id.*

**¶20**     The superior court did not abuse its discretion by finding Mother's relocation to Phoenix from Yuma constituted a change in circumstances materially affecting the children. The long distance from Father impacts the availability of his non-overnight parenting time provided for in the decree. The move also changed the children's home, school, and community activities. Furthermore, the evidence showed that Mother did not consult Father before making decisions about the children. These are changes materially affecting the children's welfare. *Id.* at ¶ 15.

### D.     The Superior Court Failed to Make Findings About the Evidence of Domestic Violence.

**¶21**     Mother next argues the superior court failed to make findings about relevant best interests factors upon which the parties presented evidence. The court must "make specific findings on the record about all relevant factors and the reasons for which the decision is in the best interests of the child[ren]." A.R.S. § 25-403(B). "This statutory requirement cannot be satisfied by inference from a court's order or waived by a party." *Olesen v. Daniel*, 251 Ariz. 25, 29, ¶ 17 (App. 2021). One of the best interests factors is whether there has been domestic violence. *See* A.R.S. § 25-403(A)(8). If there is evidence of domestic violence, the court must apply the framework outlined in A.R.S. § 25-403.03. *DeLuna v. Petitto*, 247 Ariz. 420, 423, ¶¶ 11–12 (App. 2019).

**¶22**     The superior court must consider whether there is evidence of: (1) significant domestic violence, (2) a significant history of domestic violence, or (3) whether a parent has committed an act of domestic violence. *See* A.R.S. § 25-403.03(A), (D). The existence of any domestic violence gives rise to different presumptions that impact the award of sole or joint legal

decision-making and parenting time. *See* A.R.S. § 25-403.03(A), (D), (F). The court must also consider any evidence that may rebut the presumption. A.R.S. § 25-403.03(D), (E), (F). Finally, the court must make findings on the record about the relevant factors rebutting the presumption. *See* A.R.S. § 25-403(B); *Olesen,* 251 Ariz. at 29, ¶ 17; *DeLuna*, 247 Ariz. at 424–25, ¶ 16.

**¶23** The record on appeal includes undisputed evidence relevant to the domestic violence analysis in A.R.S. § 25-403.03. After the decree issued, Mother obtained an order of protection[2] against Father because he called her thirty to forty times a day, entered her home without permission, and looked in her windows. The order of protection allows the parties to communicate only through email and texts. Mother also described a time when Father shoved her boyfriend almost causing Mother and the children, who were nearby, to fall. Father did not dispute any of these facts.

**¶24** The superior court found "no history of significant domestic violence between the parties." This finding addresses only the "significant history" form of domestic violence. *See* A.R.S. § 25-403.03(A); *DeLuna*, 247 Ariz. at 423–24, ¶¶ 11–12, 16. But the court made no finding about "significant domestic violence" or whether Father committed "an act of domestic violence." *See* A.R.S. § 25-403.03(A), (D). Nor are there any findings about Father rebutting any presumption. The court must make these findings on the record. A.R.S. § 25-403(B); *DeLuna*, 247 Ariz. at 424–25, ¶ 16.

**¶25** Mother also contends the superior court failed to address Father's history of mental health and addiction issues. In an earlier proceeding to set aside the consent decree, Father raised his mental health struggles. At the October 30 hearing, Father admitted to past mental health issues and a prior sex addiction. But there was no evidence that these issues continue or impact his *current* ability to care for the children. In fact, Father has had overnight parenting time every other weekend since Mother moved to Phoenix. The court's finding that "[n]either parent appears to have any physical or mental health conditions that would prevent them from providing adequate care for the children[]" is consistent with the evidence presented at the hearing.

---

[2] The order of protection is not in the record. However, an exhibit list from an earlier hearing lists Mother's January 3, 2023, petition for an order of protection as one of Father's exhibits. The exhibit was not admitted into evidence.

¶26        The court failed to make the required findings about domestic violence and whether Father rebutted the statutory presumptions. Therefore, we vacate the legal decision-making and parenting time orders and remand for further consideration consistent with this decision. On remand, the superior court may, in the exercise of its discretion, allow the parties to present additional evidence relevant to the domestic violence analysis.

¶27        It is worth noting that Mother argues awarding joint legal decision-making authority without giving her final say is contrary to the decree that allows her to relocate the children without Father's permission. As noted, *supra* ¶ 14, the decree allowed Mother to relocate the children with notice and without having to follow the usual statutory procedures. *See* A.R.S. § 25-408 (D), (H). The award of joint legal decision-making is not inconsistent with Mother's right to relocate. Because the court "shall not deviate from" the parties' agreement that Mother can relocate the children without Father's consent under A.R.S. § 25-408(H), we conclude the order granting joint legal decision-making authority implicitly recognized Mother's ability to relocate the children without Father's consent.

## II.        The Solar Panel Debt Was Not Addressed in the Consent Decree and Must Be Divided Equally

¶28        The superior court ordered Mother to pay the community debt for the solar panels on the marital home. The court reasoned that, although the decree did not allocate this debt, debts usually follow the corresponding asset, and because Mother received the home, she should pay the solar panel debt. Mother argues this was error.

¶29        We review the superior court's interpretation of the decree de novo. *Cohen v. Frey*, 215 Ariz. 62, 66, ¶ 9 (App. 2007). "The meaning of a decree is to be determined from the language used." *Stine v. Stine*, 179 Ariz. 385, 388 (App. 1994). Whether a decree is susceptible to more than one interpretation is a question of law for the court to decide. *Cohen*, 215 Ariz. at 66, ¶ 11. We construe the decree's language in the context of the court's statutory duty to divide community property and debts equitably. *Id.* at 67, ¶ 14; A.R.S. § 25-318(A).

¶30        The decree divided all community debts other than the solar panels nearly equally. Additionally, the decree awarded the marital home to Mother without any equalization payment to Father for the roughly $100,000 equity in the home. Consistent with this award, Mother was to remove Father's name from the marital home and pay the mortgage.

Because the solar panels cannot be relocated to Father's residence, they must stay with the marital home, which is now Mother's asset.

¶31 A literal reading of the decree's catch-all provision assigns the debt to Father because the solar panel debt was taken out solely in Father's name: "each party pay for the debt in his or her name, and such debt is ordered as the sole and separate debt of each party's name on the debt." But Father argues the debt was mistakenly omitted, and suggests it is inequitable to apply the catch-all provision to this community debt related to the home awarded to Mother. We agree.

¶32 Courts may forgo a literal reading of a decree when doing so runs afoul of the court's duty to equitably divide community property and debts and is inconsistent with the context of the decree. *Cohen*, 215 Ariz. at 66–67, ¶¶ 12–14. Because we conclude the decree's catch-all debt provision does not apply, and the decree mistakenly omitted assigning or dividing the solar panel debt, the question becomes, what is to be done?

¶33 "Community debts not allocated by a divorce decree are apportioned equally between the former spouses." *Fleming v. Tanner*, 248 Ariz. 63, 70, ¶ 23 (App. 2019); *accord Fischer v. Sommer*, 160 Ariz. 530, 531 (App. 1989) (holding that community debts not allocated in the decree remain joint obligations and should be apportioned equally); *Jankowski v. Jankowski*, 114 Ariz. 406, 407 (App. 1977) (holding that parties remained jointly liable for community debts not allocated in the decree).

¶34 The party paying the joint obligation may move to reopen the decree to enforce the joint obligation, but the court cannot modify the decree unless the court finds conditions that justify reopening a decree under ARFLP 85. *Fischer*, 160 Ariz. at 531–33 (interpreting a request for post-decree contribution for an unallocated community debt under the civil counterpart to ARFLP 85); A.R.S. § 25-327(A); *see also Quijada v. Quijada*, 246 Ariz. 217, 220, ¶ 6 (App. 2019) (holding that the terms of a decree are not subject to post-decree modification absent a showing that relief is warranted under ARFLP 85). Husband did not move to reopen the decree, so the court was compelled to divide the community obligation equally. *Fisher*, 160 Ariz. at 531. The court, therefore, erred when it allocated the entire debt to Mother.

¶35 Finally, Mother argues the superior court should never have ruled on the solar panel debt because Father did not properly plead the issue before the evidentiary hearing. But Mother waived any objection to the court addressing the solar panel debt. She did not object when Father

listed this issue in his prehearing "notice of issues." Mother also addressed the solar panels in her prehearing statement without objecting that the issue was untimely. She offered the solar panel agreement as an exhibit. And her attorney waited until closing arguments to assert that this issue was untimely. Even if the issue was untimely, Mother cannot show prejudice because she fully litigated the issue before objecting. *See Volk v. Brame*, 235 Ariz. 462, 470, ¶ 26 (App. 2014) (holding due process errors warrant reversal only if prejudice is shown).

¶36 Consequently, we vacate the order directing Mother to pay the entirety of the solar panel debt. On remand, the superior court shall allocate the decree's omitted community debt equally between the parties. *Fleming*, 248 Ariz. at 70, ¶ 23.

## CONCLUSION

¶37 We vacate the legal decision-making authority and parenting time orders and remand for further proceedings consistent with this decision. We also vacate the order requiring Mother to pay the entirety of the solar panel debt and remand for the superior court to allocate the debt equally between the parties. Mother is entitled to her reasonable costs on appeal under A.R.S. § 12-342(A) upon compliance with Arizona Rule of Civil Appellate Procedure 21.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**: JR

10